236 N.J. Super. 428 (1989)
566 A.2d 202
AMERICAN EMPLOYERS' INSURANCE COMPANY, THE EMPLOYERS' FIRE INSURANCE COMPANY, AND THE NORTHERN ASSURANCE COMPANY OF AMERICA, APPELLANTS,
v.
COMMISSIONER OF INSURANCE, DEPARTMENT OF INSURANCE, STATE OF NEW JERSEY, RESPONDENT. IN THE MATTER OF DETERMINATION OF EXCESS PROFITS AS TO AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY AND AMERICAN PROTECTION INSURANCE COMPANY. WEST AMERICAN INSURANCE COMPANY AND THE OHIO CASUALTY GROUP OF INSURANCE COMPANIES, APPELLANTS,
v.
DEPARTMENT OF INSURANCE, STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1989.
Decided October 23, 1989.
*429 Before Judges PRESSLER, LONG and LANDAU.
Elizabeth J. Sher argued the cause for appellants in Docket A-6166-87T2 (Pitney, Hardin, Kipp & Szuch, attorneys; Elizabeth J. Sher and David M. Fabian on the brief).
Richard R. Spencer, Jr. argued the cause for appellants in Docket A-364-88T2 (Stryker, Tams & Dill, attorneys; Bressler, Amery & Ross, of counsel; Mark L. Mucci on the brief).
Alan H. Bernstein argued the cause for appellants in Docket A-636-88T2 (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Alan H. Bernstein and David S. Bernstein on the brief).
Joseph L. Yannotti, Deputy Attorney General, argued the cause for respondent in Dockets A-6166-87T2, A-364-88T2 and A-636-88T2 (Peter N. Perretti, Jr., Attorney General, attorney; Michael R. Clancy, Assistant Attorney General, of counsel; Joseph L. Yannotti on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
These are three separately docketed appeals by the insurance companies footnoted below[1] (Insurers) from final determinations made in 1988 by the New Jersey Commissioner of Insurance *430 (Commissioner) which directed each individual insurer to return excess profits to policyholders pursuant to N.J.S.A. 17:29A-5.4 for the years 1985 through 1987.
We consolidated these appeals for opinion because they raised the common argument that the Commissioner violated the New Jersey Administrative Procedure Act (N.J.S.A. 52:14B-1 to 52:14B-15) by changing the method of evaluating excess profits from one which aggregated combined data and experience of a commonly owned group of insurers, to one which required calculation of the data for each affiliated insurer separately. The effect of the change was to negate the offset of poor financial results of one affiliate against the profits of another when calculating, under N.J.S.A. 17:29A-5.2 and 17:29A-5.3, the amount of excess profits to be redistributed to policyholders as required by N.J.S.A. 17:29A-5.4.
The applicable statutory excess profits scheme for private passenger automobile insurance companies was enacted as Chapter 357 of the Laws of 1983, codified as N.J.S.A. 17:29A-5.2 to 17:29A-5.5. The introductory statement to the legislation reads:
This bill requires private passenger automobile insurers to file with the Department of Insurance annual financial disclosure statements containing detailed information on the financial results of their operations in New Jersey.
This bill also establishes statutory standards for reporting and determining excess profits earned by insurers on private passenger automobile insurance in New Jersey, and for refunding any excess profits to policyholders.
Companies with less than 0.5% of the New Jersey private passenger automobile market are exempt from the financial disclosure provisions of this bill but not from the excess profits requirements.
This bill is modeled after the financial disclosure and excessive profits laws of the State of Florida.
L. 1983, c. 357, Introductory Statement.
The text of the statute is annexed as Appendix A hereto. An implementing regulation was made effective April 7, 1986 as N.J.A.C. 11:3-20.1. That regulation is annexed as Appendix B hereto.
*431 In 1988, the Legislature repealed N.J.S.A. 17:29A-5.2 to 17:29A-5.5, and substituted N.J.S.A. 17:29A-5.6 to 17:29A-5.16 as an excess profits statute for private passenger automobile insurance carriers. N.J.S.A. 17:29A-5.7, which is part of that act, provides that:
A separate profits report shall be filed for each insurer and each insurer in an insurance holding company system. Each insurance holding company system shall file a separate combined profits report for all insurers in its system. The excess profits computation for an insurance holding company system shall be performed on its combined profits report, except that the commissioner may order an adjustment in the combined profits report if in his judgment, upon examining each insurer's profits report in the insurance holding company system, one or more of the insurers in that system are excessively subsidizing other insurers in that system.
On May 15, 1989, regulations were adopted, codified under the same section numbers as the 1986 regulations, i.e., N.J.A.C. 11:3-20.1 to .10. These regulations are consistent with the policy of the 1988 legislation as to excess profits reporting. N.J.S.A. 17:29A-5.9 sets the due date for the first profits report required by the 1988 Act as July 1, 1989.
Thus, the consolidated matters before us affect only reporting and excess profits assessment in 1988, the limited period between the change in policy as to excess profit calculations of group affiliated insurers and adoption of the 1988 statute.
It is not disputed that in 1986 and 1987 the Commissioner evaluated excess profits on an insurer-group basis. As noted, the 1986 version of N.J.A.C. 11:3-20.1 to .10 expressly set forth that reporting methodology. Moreover, the Department of Insurance prescribed reporting forms which recognized the group-wide data submissions.
On May 27, 1988, without prior notice, the Commissioner ordered that the reporting for excess profit purposes must henceforth be filed only on an individual insurer basis. When assessments of excess profits were later made on that basis as well, these appeals followed.
We reverse because we agree that modification of the previous administrative policy on excess profits, a policy consistent *432 with the reporting regulations, should have been effected through the rule-making procedures of N.J.S.A. 52:14B-1 to 52:14B-15. N.J.S.A. 52:14B-2(e) provides:
"Administrative rule" or "rule," when not otherwise modified, means each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency. The term includes the amendment or repeal of any rule, but does not include: (1) statements concerning the internal management or discipline of any agency; (2) intraagency and interagency statements; and (3) agency decisions and findings in contested cases.
The term "insurer" was not specifically defined in the 1983 legislation, but was defined in the 1986 implementing regulations and forms to include a group of affiliated insurers. See Appendix B, N.J.A.C. 11:3-20.3, .4. Several years of established policy and practice confirmed departmental acceptance that the method of computing excess profits would parallel the method established for reporting the data used for the computation.
Rule making is necessary when "many or most" of the following criteria are present in an agency action which:
(1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.
Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 331-32 (1984).
Here, all six Metromedia factors are present. Most significant of these is the undisputedly "material and significant change" from the Department's clear past position.
*433 The core of the Commissioner's response to the argument that formal rule-making procedures were here required is a contention that N.J.S.A. 17:29A-5.4 unambiguously requires that each insurer which transacts private passenger automobile insurance in this State must establish a plan for redistribution of excess profits. The Commissioner reasons that because L. 1983, c. 357 was enacted as a supplement to L. 1944, c. 27 (N.J.S.A. 17:29A-1 to 17:29A-5), the N.J.S.A. 17:29A-1(g) definition of "insurer" is applicable.[2] Accordingly, it is argued, the 1988 Departmental order which required filings on an individual insurer basis, and the later determination of excess profits on that basis, was not a rule-making interpretation, but merely a straight forward implementation of the unambiguous statutory definition of "insurer."
Had the 1988 order and rulings under review reflected the Department's consistent interpretation of the 1983 legislation since its enactment, a court might well affirm the 1988 order and rulings as reasonable without the necessity for further regulation. We recognize that groups of sister companies are not authorized as groups to do insurance business in New Jersey. Nonetheless, the 1986 filing regulations, and the excess profit policy respecting groups which consistently followed those regulations, did not unreasonably interpret the existing excess profit legislation, particularly as the expressed intention of the 1983 Act was to follow the path earlier blazed by the State of Florida. Florida's law utilizes group-based data and excess profit determinations.[3]
As the 1986 regulations, and the parallel departmental policy respecting excess profit calculations on a group basis were not invalid per se, we hold that modification thereof should have *434 been effected in accordance with N.J.S.A. 52:14B-4 to 52:14B-4.9, and the teachings of Metromedia.
We add our recognition that a historic and primary function of state insurance regulation is to protect consumers by monitoring the solvency of companies whose ability to carry out their contracts is critical to the financial security of victims covered thereunder. The Legislature has wisely added to this regulatory function a dimension of consumer protection against unreasonable profits by private passenger automobile insurance carriers. When the "rules," written or unwritten, governing excess profits determination are to be changed, a wise accommodation of these two functions requires that the industry be apprised of this in time to adjust underwriting and other legitimate management practices accordingly. Further, it is important that the public and the industry should be noticed so that they may bring to the regulators' attention views as to the probable consequences of a material change.
In the present cases, the effect of the 1988 order will be to require certain insurance companies within a group to refund to their insureds large amounts of "excess profits" earned in years when the Departmental policy was different. Affiliated companies in the same group will then swallow large losses generated during those years. We do not presume to evaluate the consequences or authenticity of those losses. It is clear to us, however, that, absent reliance on the earlier policy, some things would have been done differently in the years retroactively affected, and that there must now be some material consequences to insurers and the public as a result of the changed policy.
Compliance with the Administrative Procedure Act and the Metromedia standards is not only a matter of fairness, but a means of informing regulators of possibly unanticipated dimensions of a contemplated rule. Here, for example, hearings on the new rule might well have presented the Commissioner with issues such as impact on solvency of given insurance companies *435 and impact on market availability of voluntary private insurance, to be considered with the benefits of returning excess premiums to insureds of profitable companies.
We reverse and remand for recalculation of excess profits under the 1988 order, consistent with the methods employed in the two prior years.

APPENDIX A

17:29A-5.2. Report on financial information
a. An insurer transacting private passenger automobile insurance business in this State, shall annually file, on or before July 1 of each year, separate financial information with the commissioner required pursuant to paragraphs (1) through (10) of this subsection for the following categories of private passenger automobile coverages: bodily injury liability; property damage liability; uninsured motorist and underinsured motorist; personal injury protection benefits; comprehensive; collision. The information shall be on direct insurance writings in this State, and shall represent total limits data. The information required pursuant to paragraphs (1) through (10) shall be for each of the latest three calendar-accident years and for all three years combined, with an evaluation date of March 31 of the reporting year.
The financial information shall include:
(1) Premiums earned;
(2) Policyholder dividends incurred;
(3) Expenses for acquisition and general expenses;
(4) Expenses for agents' commissions, taxes, licenses and fees;
(5) Profit and contingency factors as utilized in the insurer's automobile rate filings for the applicable years;
(6) Losses paid;
(7) Losses unpaid stated at the final settlement value;
(8) Loss adjustment expenses paid; and
(9) Loss adjustment expenses unpaid stated at the final settlement value;
(10) Actuarial gain or loss, equal to the difference between paragraph (1) and the sum of paragraphs (2) through (9), inclusive.
b. Each insurer subject to the provisions of subsection a. which has an actuarial gain as set forth in paragraph (10) of subsection a. for all coverages combined and all years combined shall also file with the commissioner the following information for direct private passenger *436 automobile insurance business transacted in this State, to be reported on a calendar year basis not later than April 15 of the following year:
(1) Direct premiums written;
(2) Direct premiums earned;
(3) Loss reserves for all known claims for the beginning and end of the year;
(4) Reserves for losses incurred but not reported for the beginning and end of the year;
(5) Incurred allocated loss adjustment expenses;
(6) Incurred unallocated loss adjustment expenses;
(7) Direct losses paid;
(8) Underwriting income or loss;
(9) Commissions and brokerage fees;
(10) Taxes, licenses, and fees;
(11) Other acquisition costs;
(12) General expenses;
(13) Policyholder dividends; and
(14) Net investment gain or loss and other income gain or loss allocated pro rata by earned premium to New Jersey business utilizing the investment allocation formula contained in the National Association of Insurance Commissioners' Profitability Report by line by state.
Any insurer which does not write at least 0.5% of the New Jersey private passenger automobile market, based on direct premiums written, shall not have to file any report required by this section, other than a report indicating its percentage of the market share. That percentage shall be calculated by dividing the insurer's current premiums written in this State by the preceding year's total premiums written by all those insurers.
A summary of the information provided pursuant to this section shall be provided in the commissioner's annual report.
The financial information required by this act shall be filed on July 1 next following the operative date of this act for the preceding calendar year.
"Private passenger automobile" means an automobile as defined in section 2 of P.L. 1972, c. 70 (C. 39:6A-2).
L. 1983, c. 357, § 1, eff. Oct. 4, 1983, operative Jan. 1, 1984.
Introductory Statement
Assembly, No. 3820  L. 1983, c. 357
This bill requires private passenger automobile insurers to file with the Department of Insurance annual financial disclosure statements containing detailed information on the financial results of their operations in New Jersey.

*437 This bill also establishes statutory standards for reporting and determining excess profits earned by insurers on private passenger automobile insurance in New Jersey, and for refunding any excess profits to policyholders.
Companies with less than 0.5% of the New Jersey private passenger automobile market are exempt from the financial disclosure provisions of this bill but not from the excess profits requirements.
This bill is modeled after the financial disclosure and excessive profits laws of the State of Florida.

Historical Note
Section 5 of L. 1983, c. 357, approved Oct. 4, 1983, provides:
"This act shall take effect immediately but remain inoperative until January 1, 1984."
Title of Act:
An Act concerning financial disclosure and excess profits by automobile insurers, and supplementing P.L. 1944, c. 27. (C. 17:29A-1 et seq.). L. 1983, c. 357.

Library References
Appleman, Insurance Law and Practice, § 10432.

17:29A-5.3. Excess profits; calculation of gain or loss; reporting
Excess profits shall exist if the combined underwriting gain for the three most recent calendar-accident years of an insurer transacting automobile insurance in this State is greater than the insurer's anticipated underwriting profit, plus 5% of earned premiums for those calendar-accident years. An insurer's underwriting gain or loss for each calendar-accident year shall be computed by subtracting the sum of the accident year incurred losses and loss adjustment expenses as of March 31 of the following year, developed to an ultimate basis, plus the administrative and selling expenses incurred in, and policyholder dividends applicable to the calendar year, from the calendar year earned premium. Any refund or renewal credit made pursuant to this section shall be deemed a policyholder dividend applicable to the year in which it is incurred, for purposes of reporting under this section for subsequent years.
Anticipated underwriting profit shall be computed by multiplying the earned premiums applicable to each rate filing of the insurer in effect during the three-year period by the percentage factor included in the rate filing for profit and contingencies, which factor shall be determined with due recognition to investment income from funds generated by New Jersey business. Separate calculations need not be made for consecutive rate filings containing the same percentage factor for profits and contingencies.
Excess profits reporting shall be made to the commissioner, on forms prescribed by the commissioner, not later than July 1 of each year.
*438 The first calculation and reporting of excess profits data shall begin with the third year for which financial reports are filed in accordance with section 1 of this act.[1a]
L. 1983, c. 357, § 2, eff. Oct. 4, 1983, operative Jan. 1, 1984.

Historical Note
Statement: Introductory statement to Assembly, No. 3820  L. 1983, c. 357, see § 17:29A-5.2.

APPENDIX B

SUBCHAPTER 20. REPORTING FINANCIAL DISCLOSURE AND EXCESS PROFIT REPORTS

Authority

N.J.S.A. 17:1-8.1, 17:1C-6(e); 17:29A-5.2 through 17:29A-5.5.

Source and Effective Date.

R. 1986 d. 111, effective April 7, 1986.

See: 17 N.J.R. 2597(a), 18 N.J.R. 692(a).

11:3-20.1 Purpose
This subchapter sets forth the financial disclosure and excess profit reporting requirements for all private passenger automobile insurers, pursuant to N.J.S.A. 17:29A-5.2 and 17:29A-5.3.

11:3-20.2 Scope
The provisions of this subchapter apply to all insurers transacting private passenger automobile insurance business in this State.

11:3-20.3 Definitions
The following words and terms, when used in this subchapter, shall have the following meanings unless the context clearly indicates otherwise:
"Annual statement" means the report prescribed by the National Association of Insurance Commissioners (NAIC) and annually filed with the Insurance Department by insurers licensed to do business in New Jersey.
*439 "Accident year losses" means the incurred losses resulting from accidents that occurred during the period January 1 to December 31.
"Calendar year losses" means the losses paid during the 12-month period, plus the loss reserved on December 31, the end of the 12-month period, less the loss reserves on January 1, the beginning of the 12-month period.
"Calendar-accident year data" means the premiums for the calendar year and the losses for the accident year.
"Calendar year" means the year beginning January 1 and ending December 31.
"Commissioner" means the Commissioner of the New Jersey Department of Insurance.
"Direct earned premiums" means the pro rata portion of the premium in force applicable to the expired period of the policy term arising from policies issued by the insurer collecting the premium and acting as the primary insurance carrier.
"Direct written premiums" means all premiums (less return premiums) as recorded by the insurer arising from policies issued by the insurer collecting the premium and acting as the primary insurance carrier.
"Due recognition to investment income" means use of the Clifford Formula to determine underwriting profit margin.
"Insurance Expense Exhibits (IEE)" means the detailed analysis of expenses by line of insurance prescribed by the National Association of Insurance Commissioners (NAIC).
"Insurer" means any person or persons, corporation, association, partnership or company transacting private passenger automobile insurance business in the State of New Jersey. As applicable in this subchapter, the term shall include affiliated insurers but excludes the New Jersey Automobile Full Insurance Underwriting Association.
"Line of coverage" means the three lines on page 14 of the Annual Statement on which private passenger automobile insurance is reported, 19.1 private passenger automobile no-fault, 19.2 private passenger automobile other liability, and 21.1 private passenger automobile physical damage.
"Private passenger automobile insurance" means business as reported in the (NAIC) Annual Statement, page 14, lines 19.1 private passenger no-fault, 19.2 private passenger other liability and 21.1 private passenger physical damage for automobiles as defined in N.J.S.A. 39:6A-2.
*440 "Profit and contingency factors" means factors determined with due recognition to investment income from funds generated by New Jersey business.

11:3-20.4 General reporting requirements
(a) Every private passenger automobile insurer, except as provided at (c) below, shall file with the Commissioner an Actuarial Results Report on or before July 1 of each year. The contents of an Actuarial Results Report are set forth in N.J.A.C. 11:3-20.5. The required form is a part of this rule at Appendix A.
(b) Each insurer required to file an Actuarial Results Report shall also file a Financial Disclosure Report if there is an actuarial gain for all coverages combined for the three years combined. Financial Disclosure Reports shall be filed with the Commissioner no later than April 15 of the year following the submission of the Actuarial Results Report. The contents of the Financial Disclosure Report are set forth in N.J.A.C. 11:3-20.6. The required form is a part of this rule at Appendix B.
(c) Any insurer that does not write at least 0.5 percent of the New Jersey private passenger automobile market, based on direct premiums written, shall not be required to file the Actuarial Results Report required by this section, but shall file a Market Share Report. Every group of affiliated insurers which includes more than one fire or casualty insurer shall file reports under N.J.A.C. 11:3-20.4 where the market share of the affiliated insurers in aggregate exceeds 0.5 percent. The content of a Market Share Report and the method of calculating market share percentage are set forth in N.J.A.C. 11:3-20.7. The required form is a part of this rule at Appendix C.
(d) Each insurer including those exempted from filing financial information as provided in (c) above, shall also file an Excess Profits Report. Excess Profits Reports shall be filed with the Commissioner on or before July 1 of each year. The contents of the Excess Profits Report and method of calculating excess profits are set forth in N.J.A.C. 11:3-20.8. The required form is a part of this rule at Appendix D.

11:3-20.5 Actuarial results report
(a) Each Actuarial Results Report shall contain financial information to be reported for all direct private passenger automobile business reported in the Annual Statement on page 14, lines 19.1, 19.2 and 21.1, transacted in this State on a calendar-accident year basis.
(b) Each Actuarial Results Report shall contain separate financial information for each of the previous three calendar-accident years with loss evaluations as of March 31 of the reporting year. All prior year *441 reports submitted are to be updated, so that ultimately each calendar-accident year will be reported at three separate reporting periods.
(c) A separate Actuarial Results Report form is required to be submitted for each category of coverage specified, and one form must be submitted for all coverages combined. If an insurer writes any of the specified coverages on a combined basis and the data are inseparable, the financial information required shall be shown under the most appropriate coverage and the explanation footnoted on the form. The liability coverages are to be on a total limits basis. Collision and comprehensive shall include all deductibles, including policies without deductibles. Personal injury protection coverage shall include additional personal injury protection coverage and include all deductible and options. The categories of coverage are:
1. Bodily injury liability;
2. Property damage liability;
3. Uninsured motorist and underinsured motorist;
4. Personal injury protection;
5. Comprehensive (including named peril policies); and
6. Collision.
(d) Financial information required to be reported shall include:
1. Direct premiums earned;
2. Policyholder dividends incurred;
3. Expenses for acquisition and general expenses;
4. Expenses for agents' commissions, taxes, licenses, and fees;
5. Profit and contingency factors as approved by the Commissioner for use in the insurer's automobile rate filings for the applicable years;
6. Losses paid;
7. Losses unpaid stated at the final settlement value based on development to an ultimate basis and data supporting the calculation of these figures;
8. Loss adjustment expenses paid;
9. Loss adjustment expenses unpaid stated at the final settlement value based on development to an ultimate basis and data supporting the calculation of these figures;
*442 10. Actuarial gain or loss.
(e) Expense information reported shall conform to the kinds of expense on page 1 of the Insurance Expense Exhibit. Insurers shall provide a statement describing the allocation method for determining New Jersey specific data at (d)3, 4, 8, and 9 above.
(f) Insurers shall use Form FA, appended to this subchapter, to report financial information required by this section.

11:3-20.6 Financial disclosure report
(a) An insurer shall file calendar year information as specified in this section in a Financial Disclosure Report when the total on Form FA for all coverages for the three calendar-accident years combined (line 15) displays an actuarial gain.
(b) Each Financial Disclosure Report shall contain separate calendar year information for each of the three calendar-accident years reported on the Actuarial Results Report. All prior year reports submitted are to be updated, so that ultimately each calendar year will be reported at three separate reporting periods.
(c) Calendar year information shall be on direct private passenger automobile insurance business transacted in New Jersey.
(d) Calendar year information shall be reported separately for each item listed below:
1. Direct premium written;
2. Direct premium earned;
3. Loss reserves for all known claims for beginning and end of the year;
4. Reserves for losses incurred but not reported for the beginning and the end of the year;
5. Incurred allocated loss adjustment expenses;
6. Incurred unallocated loss adjustment expenses;
7. Direct losses paid;
8. Underwriting income or loss;
9. Commissions and brokerage fees;
10. Taxes, licenses, and fees;
*443 11. Other acquisitions costs;
12. General expenses;
13. Policyholder dividends; and
14. Net investment gain or loss and other income gain or loss allocated pro rata by direct earned premium to New Jersey business utilizing the investment allocation formula contained in the NAIC Profitability Report by line by state.
(e) A separate Financial Disclosure Report shall be filed by annual statement line of insurance for private passenger automobile no-fault, private passenger automobile liability, and private passenger automobile physical damage. A summary report for all private passenger automobile lines written by the insurer must be filed.
(f) Other information requirements are:
1. Items under (d)1, 2, and 7 above shall agree with the amounts reported on the insurer's Annual Statement, page 14.
2. Items under (d)5, 6, 9, 10, 11, 12 and 14 shall be allocated on the same basis as on the insurer's Insurance Expense Exhibit. Insurers shall provide a statement describing the allocation method for determining New Jersey data on each item included in this provision.
(g) Insurers shall use Form FB, appended to this subchapter, to report financial information required by this section.

11:3-20.7 Market share report
(a) Market share percentage shall be calculated by dividing the insurer's most recent calendar year direct written premiums reported in the Annual Statement, page 14, lines 19.1, 19.2 and 21, by the total direct written premiums for all insurers in this State for the same Annual Statement lines.
(b) An insurer which writes fewer than three lines of insurance (for example, physical damage on line 21.1) shall provide a Market Share Report on the basis of the direct written premium for the insurance line(s) divided by the total direct written premium for all insurers in New Jersey for the specific line(s). Where this market share exceeds 0.5 percent the insurer shall file the report required under N.J.A.C. 11:3-20.4.
(c) The total direct written premium for all insurers in New Jersey for the specific line(s) shall be published annually by the Department of Insurance in the New Jersey Register on or before June 1.

*444
 PRIVATE PASSENGER AUTOMOBILE
 DIRECT WRITTEN PREMIUMS (IN THOUSANDS)
 Lines 1987[*]
 No-Fault 231,111
 Liability 623,357
 _________
 (Subtotal) 854,468
 Physical Damage 555,280
 _________
 (Total) 1,409,748

(d) Insurers required to submit Market Share Reports shall file such reports with the Commissioner no later than July 1 of the year following the end of the calendar year.
(e) Insurers shall use Form FC, appended to this subchapter, to report market share information.
Public Notice: Chart in (c) lists the total calendar year 1986 direct written premiums for all insurers in New Jersey for no-fault, liability and physical damage lines.
See: 19 N.J.R. 779(b).
Public Notice: Chart in (c) lists the total calendar year 1987 direct written premiums for all insurers in New Jersey for no-fault, liability and physical damage lines increased.
See: 20 N.J.R. 1116(a).

11:3-20.8 Excess profits report
(a) An insurer shall report excess profits for all private passenger automobile lines of insurance for the three previous calendar-accident years combined.
(b) Each Excess Profits Report shall contain separate financial information for each of the previous three calendar-accident years.
1. The actuarial gain or loss shall agree with the sum of the types of coverage gains and/or losses reported on Form FA line 14.
(c) Insurers shall use Form FD, appended to this subchapter, to report excess profits.

11:3-20.9 Refund or renewal credits of excess profits
(a) This section shall apply to those insurers whose combined actuarial gain for the three years reported exceeds the insurer's anticipated *445 underwriting profit plus five percent of direct premiums earned, as indicated in the Excess Profits Report.
(b) If the Commissioner determines that an insurer has made excess profits, the Commissioner shall issue a written notice to the insurer of such determination.
(c) The insurer shall submit a fair, practicable and non-discriminatory plan to refund or credit to policyholders the excess profits within 30 days after written notice has been given.
1. The refund of credit plan shall be subject to approval by the Commissioner.
2. If the refund or credit plan is disapproved, the Commissioner shall issue a written notice to the insurer containing the reasons for disapproval.
(d) Upon approval of the insurer's refund or credit plan, the Commissioner shall issue an order requiring the insurer to distribute all excess profits according to the insurer's approved plan.
(e) Any refund or renewal credit shall be deemed a policyholder dividend applicable to the year in which it is incurred for reporting in subsequent excess profits reports.
(f) Within 15 days after excess profits have been refunded or credited to policyholders, the insurer's corporate official shall certify that such refund or credit has occurred.

11:3-20.10 Effective date
(a) The first three Actuarial Results Reports shall be filed no later than July 1, 1986. One Actuarial Results Report shall be required for calendar-accident years 1983, 1982 and 1981, another Actuarial Results Report shall be required for calendar-accident years 1984, 1983 and 1982, and the third Actuarial Results Report shall be required for calendar-accident years 1985, 1984, and 1983.
(b) If required, the first three Financial Disclosure Results Reports shall be filed no later than April 15, 1987. Reports may be required for calendar years 1983, 1982 and 1981, calendar years 1984, 1983 and 1982, and/or calendar years 1985, 1984 and 1983.
*446 (c) The first three Market Share Reports shall be filed no later than July 1, 1986. Reports will be required for calendar years 1983, 1984 and 1985.
(d) The first Excess Profits Report shall be filed no later than July 1, 1986. This report will be required for calendar-accident years 1985, 1984 and 1983.

APPENDIX A

NEW JERSEY DEPARTMENT OF INSURANCE FORM FA PRIVATE PASSENGER AUTOMOBILE ACTUARIAL RESULTS REPORT
 Company Name/Group Name __________________________________
 Company/Group N.A.I.C. Code Number _______________________
 Calendar-Accident Years 19__ valued as of March 31, 19__
 19__
 19__
 Line of Coverage ____ B.I. ____ P.I.P.
 ____ P.D. ____ UM  UNM
 ____ COMP. ____ COLL.
 ____ ALL
 COVERAGES
 Coverage ____ Enter Whole Dollar Amounts
 Calendar-Accident Year Valued
 as of March 31
 (For the Year Following the
 Latest Year of Data Reported)
 19 19 19 Combined
 1. Direct Premiums Written 
 Calendar Year ____ ____ ____ ____
 2. Direct Premiums Earned 
 Calendar Year ____ ____ ____ ____
*447
 3. Direct Paid Losses ____ ____ ____ ____
 4. Direct Losses Unpaid
 a. Outstanding losses
 reported ____ ____ ____ ____
 b. Outstanding losses as
 developed[] ____ ____ ____ ____
 5. Paid Loss Adjustment
 Expenses ____ ____ ____ ____
 6. Unpaid Loss Adjustment
 Expenses
 a. Outstanding expenses as
 reported ____ ____ ____ ____
 b. Outstanding expenses as
 developed[] ____ ____ ____ ____
 7. Total (Lines 5 and 6b) ____ ____ ____ ____
 8. Agents' Commissions,
 Brokerage Fees and taxes,
 licenses, fees ____ ____ ____ ____
 9. Other Acquisition Costs and
 General Expenses ____ ____ ____ ____
 10. Total (Lines 8 & 9) ____ ____ ____ ____
 11. Policyholders' Dividends
 Incurred ____ ____ ____ ____
 12. Losses and Expenses
 (3) + (4b) + (7) + (10) + (11) ____ ____ ____ ____
 13. Actuarial Gain or Loss
 (2) - (12) ____ ____ ____ ____
 14. Allowance for Profit and
 Contingencies[] ____ ____ ____ ____
 15. Excess of Actuarial Gain or
 Loss over Anticipated Gain
 or Loss (13-14) ____ ____ ____ ____[]

*448 APPENDIX B

NEW JERSEY DEPARTMENT OF INSURANCE FORM FB PRIVATE PASSENGER AUTOMOBILE FINANCIAL DISCLOSURE REPORT CALENDAR YEAR ____
 Company Name/Group Name ________________________________
 Company/Group N.A.I.C. Code Number _____________________
 Direct Business Enter Whole Dollar Amounts
 Calendar Year Valued
 as of December 31
 (For the Year Following the
 Latest Year of Data Reported)
 Line 19 19 19 Combined
 1. Direct Premiums Written ____ ____ ____ ____
 2. Direct Premiums Earned ____ ____ ____ ____
 3. Direct Losses Paid ____ ____ ____ ____
 Loss Reserves for All Known
 Claims
 4. At the Beginning of the
 Year ____ ____ ____ ____
 5. At the End of the Year ____ ____ ____ ____
 6. Change in Loss Reserves ____ ____ ____ ____
 Reserves for Losses Incurred but
 not Reported
 7. At the Beginning of the
 Year ____ ____ ____ ____
 8. At the End of the Year ____ ____ ____ ____
 9. Change in Reserves for
 IBNR ____ ____ ____ ____
 Loss Adjustment Expenses
 Incurred
 10. Allocated ____ ____ ____ ____
 11. Unallocated ____ ____ ____ ____
 12. Total ____ ____ ____ ____
 Underwriting Expenses
 13. Agent's Commissions and
 Brokerage Fees ____ ____ ____ ____
 14. Other Acquisition Costs ____ ____ ____ ____
 Page 449
 15. General Expenses ____ ____ ____ ____
 16. Taxes, Licenses and Fees ____ ____ ____ ____
 17. Total ____ ____ ____ ____
 18. Policyholders' Dividends ____ ____ ____ ____
 19. Underwriting Income or
 Loss[] ____ ____ ____ ____
 20. Net Investment Gain or Loss
 and Other Income Gain or
 Loss[] ____ ____ ____ ____
*449
 15. General Expenses ____ ____ ____ ____
 16. Taxes, Licenses and Fees ____ ____ ____ ____
 17. Total ____ ____ ____ ____
 18. Policyholders' Dividends ____ ____ ____ ____
 19. Underwriting Income or
 Loss[] ____ ____ ____ ____
 20. Net Investment Gain or Loss
 and Other Income Gain or
 Loss[] ____ ____ ____ ____

APPENDIX C

NEW JERSEY DEPARTMENT OF INSURANCE FORM FC PRIVATE PASSENGER AUTOMOBILE MARKET SHARE REPORT
 Company Name/Group Name _______________________________
 Company/Group N.A.I.C. Code Number ____________________
 Calendar Year 19__
 Enter Whole Dollar Amounts
 Line Direct Business[] Calendar Year 19__
 1. Current Direct Written
 Premium by Insurer ____
 2. Current Direct Written
 Premium All Insurers ____
 Percentage of the New
 Jersey private passenger
 automobile market 100 ____

*450 APPENDIX D

NEW JERSEY DEPARTMENT OF INSURANCE FORM FD PRIVATE PASSENGER AUTOMOBILE EXCESS PROFITS REPORTING FORM
 Private Passenger Automobile
 Year 1 Year 2 Year 3 Combined[]
 19__ 19__ 19__
 1. Direct Premiums Earned ____ ____ ____ ____
 2. Excess of Actuarial Gain
 or Loss over Anticipated
 Gain or Loss ____ ____ ____ ____
 3. Five Percent of line 1 ____ ____ ____ ____
 4. Excess Profit ____
NOTES
[1] American Employers' Insurance Company The Employers' Fire Insurance Company Northern Assurance Company of America
A-364-88T2: American Manufacturers Mutual Insurance Company American Protection Insurance Company
A-636-88T2: West American Insurance Company The Ohio Casualty Group of Insurance Companies
[2] N.J.S.A. 17:29A-1(g) reads: "`Insurer' means any person or persons, corporation, association, partnership or company authorized by the laws of this State to transact the business of insurance in this State."
[3] 37 Fla. Stat. § 627.066.
[1a] Section 17:29A-5.2.
[*] Excludes business written through the New Jersey Automobile Full Insurance Underwriting Association. (The Department is interested in voluntary market share information for the purposes of N.J.A.C. 11:3-20. Thus, only voluntary market totals are provided.)
[] NOTES: Data supporting the calculation of these figures shall be simultaneously provided.
[] Allowance for profit and contingencies shall be determined by applying the factors utilized in the insurer's automobile rate filings, as approved by the Commissioner for use, to the appropriate earned premiums in line 2. If allowance for profit and contingencies has changed because of a filing made during the experience period, appropriate pro rata parts of the year calculations shall be made and appended to this form.
[] NOTES: Equal to the difference of Line (2) and the sum of Lines (3), (6), (9), (12), (17) and (18).
[] Allocated pro rata by earned premium to New Jersey business, utilizing the investment income allocation formula contained in the N.A.I.C.'s Profitability Report by line by state.
[] NOTE: Based on lines of business (Annual Statement page 14 lines 19.1, 19.2 and 21.1 as applicable).
[] Refers to the three private passenger lines reported on page 14 of the Annual Statement.

Notes for companies that file Form FA:
Line 1 shall agree with the sum of direct premiums earned on an all coverages combined basis.
Line 2 shall agree with the excess actuarial gain and/or loss on an all coverages combined basis on Form FA, line 15.
Line 4 is an excess profit if line 2 minus line 3 is a positive number.
Notes for companies that do not file Form FA:
Companies not required to file Form FA shall complete Form FD using data from Part II of the Insurance Expense Exhibit (IEE). Item 1 of Form FD shall be taken from line 15 of the IEE. From this amount shall be subtracted lines 16 and 17, also the product of line 1 times the sum of the percentages shown on lines 19, 6, 7 and 11 and 8 adjusted for New Jersey tax and assessment rates. Item 2 of Form FD shall equal the excess of this difference over the anticipated gain or loss not including investment income as provided in collected rates. New Jersey assessments shall exclude the excess medical portion of the Unsatisfied Claim and Judgment Fund assessment.